William R. CAPERCI, et al., Plaintiffs,

v.

RITE AID CORPORATION, Defendant.

No. C.A. 95–12720–RCL.

United States District Court,
D. Massachusetts.

March 4, 1999.

John P. Connelly, Peabody & Arnold LLP, Boston, MA, Stephen Hrones, Hrones & Garrity, Boston, MA, Harvey Weiner, Peabody & Arnold LLP, Boston, MA, for plaintiffs.

Treazure R. Johnson, Eckert, Seamans, Cherin & Mellott, Boston, MA, John J. Myers, James G. Seaman, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for defendant.

LINDSAY, District Judge.

Report and Recommendation Accepted: The defendant's motion for summary judgment is *allowed.* Judgment shall enter for the defendant dismissing the complaint.

### REPORT AND RECOMMENDATION REGARDING DEFENDANT RITE AID CORPORATION'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 63)

August 18, 1998

KAROL, United States Magistrate Judge.

Plaintiffs are twenty-one pharmacists presently or formerly employed by wholly-

owned subsidiaries of defendant Rite Aid Corporation ("Rite Aid").[1] They bring this suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that Rite Aid failed to pay them overtime compensation in accordance with the requirements of the FLSA. *See* 29 U.S.C. § 207(a) (West Supp.1998) (requiring with certain exceptions that employer pay overtime at the rate of one-and-a-half times the employee's regular rate for hours worked by employee in excess of 40 during any week). Rite Aid concedes that plaintiffs and the thousands of other pharmacists employed by its subsidiaries are not paid overtime in accordance with the FLSA, but it claims that they are not entitled to it because they are covered by the exemption for salaried professionals. Plaintiffs concede that they are professionals, but they deny that they are salaried. The only dispute between the parties, therefore, is whether plaintiffs are salaried within the meaning of applicable law. Discovery having been completed, Rite Aid has now moved for summary judgment on the ground that plaintiffs are indeed salaried and are therefore exempt from the FLSA's overtime requirements. For reasons stated below, I recommend that Rite Aid's motion be **ALLOWED.**

## I. THE LEGAL FRAMEWORK

### A. The FLSA Standard

With certain exceptions, the FLSA requires that employers pay overtime at the rate of time and one-half to employees who work more than 40 hours in a week. 29 U.S.C. § 207(a). One such exception applies to employees who work in a "bona fide ... professional capacity ... as such term[ ][is] defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1) (West Supp.1998). The regulatory definition of the term "employed in a bona fide ...

professional capacity" includes both a primary duty test and a salary test. 29 C.F.R. § 541.3. The primary duty test addresses the type of work that the employee performs; the salary test includes a requirement that the employee be "compensated on a salary ... basis," 29 C.F.R. § 541.3(c), and that the amount of the compensation be no less than a specified amount. There is no dispute here that the primary duty test is satisfied or that plaintiffs are paid at least the minimum amount needed to satisfy the second prong of the salary test. The only issue, therefore, is whether the compensation that plaintiffs receive takes the form of "salary."

The question whether an employee's compensation takes the form of salary is addressed by another regulation, 29 C.F.R. § 541.118(a), which provides, in pertinent part:

> An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked....
>
> (1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirement of the business....

29 C.F.R. § 541.118.[2] The regulation goes on to describe the circumstances under which deductions from pay may be made

---

**1.** Although plaintiffs are only indirectly employed by Rite Aid, Rite Aid does not deny that it is the relevant "employer" for purposes of this case.

**2.** There is no dispute that the regulation is valid and controlling here.

for full day (or longer) absences without undermining the employee's exempt status, but it does not expressly address partial day absences. It is generally understood, however, and not disputed by defendant here, that an employee is not paid on a salary basis if the employer has a policy or regular practice of reducing the amount of the employee's weekly or other periodic paycheck to reimburse the employer for partial day absences. *E.g., Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983) ("Carls' payroll data clearly show that pharmacists were paid according to an hourly rate and that this hourly amount was the amount deducted for each hour of work missed. A salaried professional employee may not be docked pay for fractions of a day of work missed.").[3]

■ Like other defenses under the FLSA, the defense that an employee is employed in a bona fide professional capacity must be construed narrowly and rejected if the employer fails to carry its burden of proving that it "plainly and unmistakably" applies. *See, e.g., Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393, *reh'g denied,* 362 U.S. 945, 80 S.Ct. 803, 4 L.Ed.2d 772 (1960).

### B. *The Summary Judgment Standard*

The standard for summary judgment is familiar. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). At the outset, the moving party must aver that there is an absence of evidence to support the nonmoving party's position. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). To avoid summary judgment, the opposing

party must produce affirmative evidence demonstrating a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 825 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "[T]he nonmovant may not rest upon mere allegations, but must adduce specific provable facts demonstrating that there is a triable issue." *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). In reviewing the nonmovant's case, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party," *Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir. 1983); *see Mack v. Great Atlantic & Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989), subject, nevertheless, to the caveat that the court "may ignore unsupported conclusions ... [and] rank speculation." *Serapion v. Martinez,* 119 F.3d 982, 987 (1st Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998).

### II. *THE SUMMARY JUDGMENT RECORD*

For purposes of the pending motion, the following facts either are undisputed or, though disputed, are sufficiently supported by evidence in the summary judgment record to permit a finding in plaintiffs' favor.

To assure that at least one pharmacist will be on site during each hour that a Rite Aid pharmacy is open, Rite Aid will typically staff each pharmacy with two pharmacists. When Rite Aid hires a pharmacist, it assigns to him or her a schedule of hours he or she will be expected to work. Taking into account the number of hours scheduled (which may be 40, more than 40,

---

**3.** The regulation also provides in Subsection (a)(6) that, under certain circumstances, an employer who has made a non-permitted deduction from an employee's paycheck can nevertheless preserve the employee's exempt status by reimbursing the employee for the

deduction and promising to comply in the future. 29 C.F.R. § 541.118(a)(6). Rite Aid invokes this cure provision as a fallback position, but I do not reach the issue of its applicability in light of my conclusion that no non-permitted deductions were made.

or less than 40) and other factors, such as Rite Aid's needs and the pharmacist's level of experience, a regular, weekly salary is established.[4] Thereafter, Rite Aid carefully monitors the number of hours the pharmacist actually works. If the pharmacist works more hours than he or she was scheduled to work in a week, Rite Aid will customarily pay the pharmacist overtime compensation for the additional hours (although not necessarily at the rate of time and one-half and not necessarily for all hours in excess of 40, if the pharmacist's regular workweek happens to be longer than 40 hours). If the pharmacist must take a partial day absence for personal reasons, Rite Aid will often require the pharmacist to account for the time by requiring that he or she (1) swap hours with another pharmacist who agrees to cover for him or her, (2) pay back the hours by working additional hours on another occasion, or (3) take a charge against accrued vacation pay, based on a rate equal to the pharmacist's regular weekly salary divided by the pharmacist's regular number of hours. Plaintiffs strongly implied in their papers and argued at oral argument that there is also a fourth method by which Rite Aid permits or requires pharmacists to account for partial day absences: through deductions from gross pay for the week in which the absence is taken. As discussed below, however, there is no evidence in the summary judgment record, direct or circumstantial, to support this critical allegation.

For a number of reasons, a pharmacist's regular weekly pay can change from time to time. For example, the regular weekly pay can change if the pharmacist receives a raise based on increased experience or tenure with Rite Aid; if the pharmacist relocates to a different store with different hours of operation; or if Rite Aid and the pharmacist agree to increase or decrease the pharmacist's regular number of hours at the store to which he or she is assigned. The latter can occur either because the pharmacist simply decides that he or she wants to work longer or shorter hours (and Rite Aid concurs) or because the local manager unilaterally decides to change the regular hours of store operation (such as by deciding to close at 9:00 p.m. instead of remaining open until 11:00 p.m.). In each instance, Rite Aid is apt to change the pharmacist's regular weekly pay and to do so, in the case of a raise, based upon a higher imputed hourly rate of pay, or, in the case of a change in the pharmacist's regular number of hours, in direct proportion to the change in hours. Once the new weekly amount of pay is set, however, the pharmacist's gross weekly pay is never reduced below the agreed upon amount.

The last point requires some clarification, in light of plaintiffs' contention that Rite Aid typically closes its stores on Christmas and docks the pharmacist's regular pay for that day if he or she was otherwise scheduled to work. There is indeed evidence in the record sufficient to support a finding that Rite Aid does close its stores on Christmas and that, if a pharmacist is otherwise scheduled to work on that day, he or she will receive a paystub

---

4. Although Rite Aid typically agrees to pay the pharmacist the same fixed sum for each week the pharmacist works, and although the sum agreed upon is tied directly to the number of hours the pharmacist is expected to work, the pharmacist is not necessarily expected to work the same number of hours each week. Rather, it is a common practice for the two pharmacists responsible for the coverage of a particular store to alternate shifts with each other on a weekly basis, such that, in alternating weeks, one of the pharmacists will work a longer week and the other will work a shorter week. For example, two pharmacists, A and B, might share coverage of a particular store that is regularly scheduled to be open 84 hours per week. In alternating weeks, Pharmacist A might work 38 and 50 hours. To fill out the 84–hour schedule, Pharmacist B would work 46 hours in the week in which Pharmacist A worked 38 hours and 34 hours in the week in which Pharmacist A worked 50 hours. In this example, Pharmacist A would be paid the same amount for each week's work, based on an assumed 44–hour week, and Pharmacist B would be paid the same amount for each week's work, based on an assumed 40–hour week.

for the week that will reflect a reduction equal to one day's pay in the section of the paystub in which the portion of compensation identified as "regular" pay is recorded. On the same paystub, however, there will also be an offsetting *increase* equal to one day's pay in the section of the paystub in which compensation identified as "hldy-pay" is recorded.[5] The result is that the pharmacist's gross compensation for such week will be at least equal to the regular weekly compensation that the pharmacist receives in each of the other fifty-one weeks of the year. The only thing that changes are the internal accounts to which Rite Aid charges the compensation that the pharmacist receives during the one week each year in which Christmas falls. The legal significance of this practice is discussed below.

## III. *DISCUSSION AND ANALYSIS*

Plaintiffs make five primary arguments in support of their position that they are not paid on a salary basis:

1. There is, generally speaking, a fundamental inconsistency between Rite Aid's claim that pharmacists are paid on a salary basis and Rite Aid's preoccupation with the number of hours plaintiffs work.

2. Rite Aid requires pharmacists to account and make up for partial day absences.

3. Rite Aid pays overtime compensation when a pharmacist works more hours than he or she is regularly scheduled to work, and the amount of overtime is based on or at least takes into account the pharmacist's regular hourly rate of pay.

4. Rite Aid docks the "regular" pay of pharmacists who are scheduled to work on the day that Christmas falls, to account for the fact that all Rite Aid stores are closed that day.

5. If the length of a pharmacist's regularly scheduled work week is shortened, whether as a result of a unilateral decision by Rite Aid or of a joint decision by Rite Aid and the pharmacist, the pharmacist's salary will be reduced in proportion to such reduction.

■ I will discuss each argument in turn, recognizing that, in each instance, the burden is on Rite Aid to establish its entitlement to the exemption.

■ 1. Plaintiffs' first argument is that it is incongruous to apply the professional status exemption to employees whose hours are monitored and whose base compensation is directly and unabashedly tied to the number of hours they are scheduled to work. The unstated premise of such argument is that the regulations that purport to define such terms as "professional capacity" and "paid on a salary basis," *see e.g.*, 29 C.F.R. § 541.118, are less than comprehensive. Putting it another way, a bona fide employment relationship can, according to plaintiffs, meet all the regulatory requirements and still not qualify for the statutory exemption if certain contaminating attributes typically associated with the relationship between employers and hourly workers are also present. This premise is clearly false, however, at least, as here, where no claim is made that the employer is utilizing sham employment practices for the sole purpose of evading the regulations.

The analysis begins with 29 U.S.C. § 213(a)(1), which creates the exemption for employees working in a "bona fide ... professional capacity." 29 U.S.C. § 213(a)(1). Significantly, the FLSA does not itself purport to define this phrase. Rather, it expressly provides that it shall be defined entirely by regulation. *Id.* The regulation which gives content to the term "bona fide ... professional capacity" is 29

---

5. If Christmas happens to fall on a day the pharmacist is not scheduled to work, with the result that the pharmacist actually works his or her regular number of hours during the week in which Christmas falls, the pharma-cist's pay stub will show "regular" pay equal to the regular weekly wage, as well as a day's "hldy-pay," for Christmas itself. In other words, in such circumstances, a pharmacist will receive more than his regular weekly pay.

C.F.R. § 541.3. Therefore, unless 29 C.F.R. § 541.3 is invalid (and plaintiffs concede it is not), it is impossible for a bona fide employment relationship to satisfy all the requirements of the regulation and not be covered by the statutory exemption. To close the analytical loop, the only regulatory requirement that plaintiffs argue is not satisfied here is the requirement that the employee be paid "on a salary ... basis." 29 C.F.R. § 541.3. But this latter term is itself comprehensively defined in Section 541.118 of the regulations, which states without exception that an "employee *will* be considered to be paid 'on a salary basis' within the meaning of the regulations" if certain objective criteria are met. 29 C.F.R. § 541.118 (emphasis added). This brings us back full circle, permitting us to say that, subject to a possible sham exception, plaintiffs are indeed exempt employees if all the objective criteria of Section 541.118 are satisfied. In short, there simply is no room within this comprehensive scheme for a hybrid worker who, though satisfying all the regulatory requirements, is nevertheless deemed to be non-exempt simply because his or her employer takes too keen an interest in the length of his or her workweek.

■ 2. Moving from the general to the specific, plaintiffs' second argument in favor of nonexempt status is based on the fact that pharmacists are required to account and make up for partial day absences. Before we can evaluate the merits of this argument, we must determine what Rite Aid's policies and practices are in this respect, or, more precisely, we must identify the relevant policy or practice most favorable to plaintiffs for which there is evidentiary support in the summary judgment record.

Rite Aid's position is concisely set forth in the Declaration of Robert R. Souder ("Souder Decl.") (attached as Ex. 15 to Record Evidence Filed in Support of Defendant's Motion for Summary Judgment, Docket No. 65). Souder, a Senior Vice President of Rite Aid, states, in pertinent part:

> The salaries of the pharmacists are not to be reduced or "docked" when they are absent from work for time periods of less than a day. Except in those instances where a pharmacist misses a full day or more of work for personal reasons, he or she is to be paid at least his or her salary for each week worked, regardless of the number of hours worked. We understand that these are the legal requirements for paying exempt salaried employees and that these are followed by all of the Rite Aid subsidiaries and are not violated.

*Id.* ¶ 4.

Plaintiffs strive to discredit Souder, but they do not succeed. At various places within their revised memorandum in opposition to defendant's motion for summary judgment (Docket No. 79), plaintiffs strongly imply (but never quite state) that there were occasions on which they took partial day absences for personal business and were required to choose between having their regular weekly paychecks docked or having a comparable number of hours charged against the paid vacation leave to which they would otherwise be entitled. For example, plaintiffs state, in the section of their memorandum that purports to set forth "material facts which preclude granting summary judgment to Rite Aid:"

> In the case of L. Sweeney, on the occasions when he had to take the partial day off for personal reasons, he was required to find someone on his own to work that partial day, and he would then have to owe those hours to that person who worked for him.... On the occasions when L. Sweeney could not work the time owed to the pharmacist covering for him when he took a partial day off for personal reasons, that pharmacist would get paid his hourly rate for the number of hours he worked for L. Sweeney.... *However, when that occurred, L. Sweeney's regular pay would be reduced, and because he needed the money*

*to pay his family's bills, the only way he could keep his pay the same was to have the money taken out of his earned vacation pay....* Exhibit G to L. Sweeney's Supplemental Affidavit reflects the deduction which Rite Aid made from L. Sweeney's earned vacation pay as a result of his taking a partial day off to attend his niece's funeral service.... Rubin, who was L. Sweeney's supervisor at the time, was able to find a pharmacist to cover for L. Sweeney for the partial day, but Rubin had to pay that pharmacist his hourly rate for the hours worked, *so L. Sweeney's pay was reduced by the same amount of hours pay, and to make sure that he had the money to pay his family's bills, L. Sweeney was required to use up some of his earned vacation hours of pay.... Exhibit H to L. Sweeney's Supplemental Affidavit shows another day when he had to take a partial day off for personal reasons; again, his pay was reduced by the hours paid to the other pharmacist, and because L. Sweeney needed to have the money to pay his family's bills and to keep his pay the same, he was required to use up some of his earned vacation hours of pay.*

(Plaintiff's Revised Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Rev.Mem.") at 6–8, Docket No. 79 (citations omitted; emphasis added)); *see also id.* at 20–21 (same) and *id.* at 25 ("As set forth above, the pharmacists in this case were also paid an hourly rate and docked for each hour of work missed.")

The two L. Sweeney Affidavits on which plaintiffs purport to base these critical allegations are at best misleading; in any event, they certainly do not support the claim that Rite Aid ever required or permitted any pharmacist to choose between receiving a smaller weekly paycheck or taking a charge against earned vacation pay. What they unequivocally do show is that the gross amount that L. Sweeney was paid for the weeks in which he took a

partial day absence was the same gross amount that he was minimally paid every other week; that the missed time was indeed charged to his vacation account; that the charging of his vacation account was presented to him by his supervisor as a *fait accompli;* and that no one ever suggested to him that he could elect instead to have his regular pay docked. From all that appears, the possibility that he might take the missed hours out of his regular weekly paycheck was never even discussed.

Chronologically, the first affidavit in which the subject is discussed is entitled "Supplemental Affidavit of Plaintiff Laurence E. Sweeney" ("Supp. L. Sweeney Aff.") and is attached as Ex. 2 to plaintiffs' Appendix Record Evidence Filed by Plaintiffs in Opposition to Defendant's Motion for Summary Judgment ("Appendix"), (Docket No. 75). In Paragraph 17, L. Sweeney states:

On the occasions when I could not work the time "owed" for the pharmacist covering for me when I took a partial day off for personal reasons, that pharmacist would get paid his hourly rate for the number of hours he worked for me. *However, when that occurred, my regular pay would be reduced, and because I needed the money to pay my family's bills, the only way I could keep my pay the same was to have the money taken out of my earned vacation pay.* I have never been allowed to take a partial day off for personal reasons without my regular pay being reduced and losing my already earned vacation pay. Exhibits G and H attached hereto are evidence of this.

(Supp. L. Sweeney Aff. ¶ 17, attached as Ex. 2 to Appendix, Docket No. 75 (emphasis added).)

The clear implication of this passage is that Rite Aid made L. Sweeney choose between foregoing some of his weekly pay or foregoing some of his paid vacation. Such implication is false, as Exhibits G and H, as well as the later-filed "Affidavit of

Plaintiff Laurence E. Sweeney in Opposition to Defendant's Motion for Summary Judgment" ("L. Sweeney Summ. Judgment Aff.") (attached as Ex. 4 to Appendix, Docket No. 75) make clear. Exhibits G and H, which L. Sweeney attaches to his supplemental affidavit, (see Ex. 2, Appendix, Docket No. 75), as evidence of the choice he was asked to make, are simply paystubs for the two weeks in question. They show that he received his regular base pay for those two weeks (approximately $778 for the week ending 3/13/93 and approximately $801 for the week ending 12/4/93), a portion of which was charged to his vacation pay account. To offset this charge to L. Sweeney's vacation pay account, and to prevent him from receiving *more* than his normal gross compensation for the weeks in question, an internal accounting charge was taken against the account entitled "regular" pay. These internal transfers did not at all cause a reduction of or otherwise affect L. Sweeney's gross compensation for the weeks in question.[6]

More to the point, there is no suggestion in Exhibit G or H that L. Sweeney was required or permitted to choose between foregoing vacation pay or accepting a reduction in his weekly compensation. L. Sweeney's own Summary Judgment Affidavit could hardly be clearer that there were several ways in which pharmacists could account for partial day absences, but foregoing some of their weekly compensation was not an option. It states, in pertinent part:

5. At no time during my employment with Rite Aid was I ever led to understand that I could take a partial day off for person reasons without accounting for the hours. To the contrary, I was of the understanding, based on the way I was paid and from my general understanding of how I was paid and my general understanding of Rite Aid policy, that if I took a partial day off for personal reasons, then I would somehow have to account for those hours. *Accounting for those hours could be in the form of: a) owing the hours to my supervisor to work at a later date (if he paid someone to work the hours I did or would have taken off); or b) switching the exact hours with someone else; or c) if Rite Aid paid someone to work the hours for me and I did not want to work the hours at a later date, having the pay come out of my vacation pay.*

(L. Sweeney Summ. Judgment Aff. ¶ 5, attached as Ex. 4 to Appendix, Docket No. 75 (emphasis added).) These, then, are the three ways that L. Sweeney understood he could account for the missed hours, and they do *not* include having the value of those hours taken out of his gross pay for the week. Later in his Summary Judgment Affidavit, L. Sweeney specifically discusses the incident involving his attendance at his niece's funeral, and he again makes clear that he was never given the option to have that time docked from his weekly paycheck. He states, in pertinent part:

8. . . . When my niece died, I told [my supervisor] Rubin that the service was going to be on that Sunday, and that I needed to get out from work around 1:00 p.m. He said no problem, and that he would get someone to cover. I specifically recall saying to Rubin "that's bereavement pay, right", or something substantially to that effect, and that Rubin said to me "no, a niece is not considered a 'family member' for bereavement pay", or something substantially to that effect.

---

**6.** This if further confirmed by Exhibit 1 to Souder Decl. (attached as Ex. 15 to Record Evidence Filed in Support of Defendant's Motion for Summary Judgment, Docket No. 65), which includes a compilation of L. Sweeney's gross pay for each week during the relevant period. Each week, L. Sweeney received a paycheck in which his gross pay was at least equal to his regular weekly salary. The statement shows, in particular, that the gross pay that L. Sweeney received in his check dated 3/18/93 for the week ending 3/13/93 was $778, and the gross pay he received in his check dated 12/9/93 for the week ending 12/4/93, following a $23 per week raise on 8/26/93, was $801.

*Rubin then said: "I'll have to take it out of your vacation pay."* At that point I agreed, because I was irritated and upset that I had to loose [sic] my vacation time for a funeral which I thought would be covered under bereavement pay.

(*Id.* ¶ 8 (emphasis added).) There is, therefore, no evidence that Rite Aid ever reduced or discussed with any pharmacist the possibility of *reducing the pharmacist's gross pay* to compensate Rite Aid for hours the pharmacist missed when he or she took a partial day absence. Indeed, as far as actual evidence in the summary judgment record is concerned, there is no reason to believe Rite Aid would even have entertained such a request by a pharmacist if one had been made. The Declaration of Robert R. Souder thus stands unrefuted in all material respects.

This finally brings us back to the important legal issue at the core of plaintiffs' argument: does charging a partial day absence to an employee's paid leave account defeat the professional capacity exemption? The answer, as found in the language of the regulation, Department of Labor ("DOL") opinion letters interpreting that regulation, and the great weight of precedent at both the circuit and district court levels, is "no."

The critical language of the applicable regulation is as follows: "An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). For present purposes, the dispositive word is "part." It tells us that as long as at least a portion of the employee's compensation is a predetermined amount that is paid weekly or less frequently and is not subject to reduction, the employee will be paid on a salary basis even if the employee is also eligible to receive other forms of compensation that are subject to reduction. In the present case, each pharmacist receives a total compensation package consisting of a base salary and other benefits, including paid annual leave. The base salary, which in this case approaches or exceeds $1,000 per week, is a "part" of that package which is predetermined in the pharmacist's employment agreement, paid weekly, and not subject to reduction. That is all that is required to satisfy the salary basis portion of the test. The fact that the package also includes as a separate component paid annual leave that is subject to reduction is beside the point and does not all affect the availability of the exemption. *See* 29 C.F.R. § 541.118(b) ("It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.").

The foregoing interpretation is directly confirmed by at least two DOL opinion letters, both of which must be given considerable deference. *See Boykin v. Boeing Co.*, 128 F.3d 1279, 1281 (9th Cir.1997) ("The Secretary's interpretation of the salary-basis test as it relates to overtime compensation is articulated clearly in the DOL's Opinion letters and is entitled to our court's deference."); *see also Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation."). The first, dated April 9, 1993, states, in pertinent part: "Where an employer has bona fide vacation and sick time benefits, it is permissible to substitute or reduce the accrued benefits for the time an employee is absent from work, even if it is less than a full day, without affecting the salary basis of payment, if by substituting or reducing such benefits, the employee receives in payment

an amount equal to his or her guaranteed salary."[7] (DOL Opinion Letter dated Apr. 9, 1993, attached as Ex. 18 to Record Evidence Filed in Support of Defendant's Motion for Summary Judgment, Docket No. 65.) The second, dated April 15, 1994, contains substantially identical language. (DOL Opinion Letter dated Apr. 15, 1994, attached as Ex. 18 to Record Evidence Filed in Support of Defendant's Motion for Summary Judgment, Docket No. 65.)

Finally, there is the matter of case law, which, although not unanimous, strongly supports the view that the partial day absences of exempt employees may be charged to paid leave accounts. Of particular interest is recent authority that calls into serious question the continued viability of earlier decisions that had questioned or rejected this interpretation. For example, in 1990, the Ninth Circuit had commented in the leading case of *Abshire v. County of Kern*, 908 F.2d 483, 487 n. 3 (9th Cir.1990), *cert. denied*, 498 U.S. 1068, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991), that a "strong argument" could be made that "even if deductions were required only from fringe benefits, such as leave time, and not from base pay, the affected employees would still not qualify as 'salaried.'" Four years later, however, the same court rejected just such argument, stating:

> The district court concluded that "[d]eductions from the paid leave banks of the Plaintiffs for absences of less than one day did not constitute impermissible deductions from 'salary' as defined in 29 C.F.R. § 541.118." In so holding, the

district court declined to follow the dicta in *Abshire.* We agree with that conclusion.

> At issue is whether the words "amount" and "compensation" in the regulation refer to cash or to all forms of compensation.... We conclude that "amount" refers to "cash" or "salary." Thus a reduction in the paid leave time does not affect the Plaintiffs' status as salaried employees.

*Barner v. City of Novato,* 17 F.3d 1256, 1261–62 (9th Cir.1994) (citations and footnotes omitted). In a footnote following the first paragraph of the quoted passage, the court added: "In reaching this conclusion we necessarily reject the holdings" of several district court cases that had come out the other way, including the frequently-cited case of *Service Employees Int'l Union, Local 102 v. County of San Diego*, 784 F.Supp. 1503 (S.D.Cal.1992). *Id.* at 1261 n. 7.[8]

In the Fourth Circuit, a split had developed between district courts that had considered the question. *Int'l Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Va.,* 720 F.Supp. 1230 (E.D.Va.1989), *aff'd*, 912 F.2d 463 (4th Cir. 1990), endorsed the position taken by Rite Aid here. The court stated: "While personal leave, sick leave and/or compensatory time may be part of an employee's compensation package, it does not constitute salary." *Id.* at 1232. Two years later, however, in *Thomas v. County of Fairfax, Va.,* 758 F.Supp. 353, 366 n. 24 (E.D.Va.1991), a different judge of the same court, citing the *Abshire* dictum that

---

**7.** The letter goes on to state that "[d]eductions from the salaries of otherwise exempt employees for partial day absences after they have exhausted their vacation or sick time benefits have never been permitted under the Regulations for either private or public employers," thus further confirming the critical distinction between charging partial day absences to paid leave time (permissible) and charging them to weekly salary (impermissible). *See id.*

**8.** Seven months after *Barner* was decided, the Ninth Circuit reversed the district court's de-

cision in *Service Employees,* albeit on other grounds. *Service Employees Int'l Union, Local 102 v. County of San Diego,* 60 F.3d 1346, 1349, 1354 (9th Cir.1994) (*"Service Employees II"*) (reversing district court finding that plaintiffs were entitled to overtime compensation, holding that version of "salary test" in existence prior to Sept. 6, 1991 was invalid in its entirety as applied to public employees, and thus remanding for determination of whether plaintiffs were exempt from the FLSA under the duties test).

the Ninth Circuit later repudiated in *Barner*, took the contrary position, stating: "But in the company of other factors indicative of an hourly payment scheme, the docking of leave weighs in favor of a finding of non-salaried status."[9] Whatever residual authority *Thomas* might have had following *Barner* was further eroded by the Court of Appeals for the Fourth Circuit itself, which expressly "endorse[d] the reasoning of *Fire Fighters*" over that of *Thomas* (and, for that matter, over that of *Service Employees* as well). *See Vogel v. American Home Products Corp. Severance Pay Plan*, 122 F.3d 1065, 1997 WL 577578, at *5 (4th Cir.1997).[10] To complete the picture, *Vogel* was anticipated by another district court within the Fourth Circuit, which, just a few days before *Vogel* was issued, also endorsed the reasoning of *Fire Fighters* over that of *Thomas:*

> This court cannot embrace Plaintiffs' arguments with respect to deductions in accrued annual or sick leave and holiday pay. Accrued leave and holiday pay are not a part of the predetermined pay Plaintiffs receive each workweek. Rather, they are fringe benefits Plaintiffs receive and their reduction is not equivalent to a reduction in pay. A reduction in paid leave time does not affect an employee's status as a salaried employee.

*Aiken v. County of Hampton, S.C.*, 977 F.Supp. 390, 397 (D.S.C.1997).

The Fifth Circuit concurs, *see York v. City of Wichita Falls, Tex.*, 944 F.2d 236, 242 (5th Cir.1991) (deductions from "sick or vacation leave on an hourly basis . . . do not establish that a person is paid on a wage basis"), as does the Seventh, *see Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066, 1070 (7th Cir.1997) ("Even if Ms. Haywood had chosen not to make up this time before taking it off, her salary would not have been reduced. Instead, she would have been issued a check in the same amount as always, and she would have had one fewer day of sick leave or personal leave."). It is true that, in *Haywood*, the court went on to point out that the absences under consideration were for a full rather than a partial day, but this observation does not undercut the view expressed in the quoted passage that "salary" for these purposes consists of what an employee receives in his or her paycheck, not paid leave. Finally, although the Tenth Circuit, in a pre-*Auer* decision, notes some uncertainty as to whether salary status can be defeated only when *actual* docking occurs, or, alternatively, whether the existence of an express policy under which docking *may* occur is sufficient to produce the same result, it clearly rejects the position espoused by plaintiffs here that partial day absences may not be charged to the paid leave accounts of exempt employees. *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 658–659 (10th Cir.), *cert. denied*, 516 U.S. 965, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995).[11]

To summarize, there is no evidence in the summary judgment record that Rite

9. For reasons already discussed, I must respectfully disagree not just with the result in *Thomas*, but also with the court's use of a balancing approach to decide an issue which, subject perhaps to a sham exception, turns squarely on the presence or absence of well-defined, objective criteria set forth in a regulation.

10. Although *Vogel* is an unpublished opinion and Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is "disfavored," it seems appropriate to cite this case for the limited purpose of demonstrating why continued reliance on *Thomas* would be misplaced.

11. At oral argument, plaintiffs noted that, with the exception of *Vogel* and *Haywood*, the cited cases involved employees in the public sector, and that, as the result of a 1992 amendment to the regulations, public employers are permitted under some circumstances to dock an employee's salary for partial day absences. *See* 29 C.F.R. § 541.5(d). The amended regulation seemed to have had no bearing on any court's analysis of the issue, however. Indeed, several of the cited cases involved compensation practices of public employers that predated the effective date of the amendment.

Aid ever took a deduction from, offered or threatened to take a deduction from, or would even have entertained a pharmacist's request to take a deduction from a paycheck as a means of accounting for a pharmacist's partial day absence. Rite Aid may have charged partial day absences to paid leave, but as a matter of law such practice does not defeat plaintiffs' exempt status.

■ 3. Plaintiffs' third argument is that salary status is defeated by Rite Aid's policy (or at least occasional practice) of paying overtime on an hourly basis to pharmacists who work more than their regularly scheduled hours during any week. Again, plaintiff's argument must be rejected based upon the applicable regulation, as written and as interpreted by the DOL, and the great weight of judicial authority.

As noted, the regulation, 29 C.F.R. § 541.118(a), requires that a "part" of an employee's compensation be a "predetermined amount" that is "not subject to reduction because of variations in the ... quantity of the work performed." 29 C.F.R. § 541.118(a). When an employer agrees to pay an employee a predetermined amount *plus* an additional amount for hours worked by the employee above his or her regularly scheduled hours, the plain language of the regulation is satisfied, because the employee's agreed upon salary—a part of his or her compensation—is predetermined and does not vary based on variations in the quantity of work performed. What does vary is the separate portion of the employee's compensation that is paid as overtime.

This interpretation is not only consistent with the plain language of Section 541.118(a), but it is expressly articulated in Section 541.118(b) and endorsed by at least one DOL opinion letter as well. Section 541.118(b) states, in pertinent part:

It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.

29 C.F.R. § 541.118(b). The regulation goes on to illustrate this concept through the use of several examples involving the payment of salary plus commissions, but, as the court noted in *Aaron v. City of Wichita, Kan.*, "there is nothing in the regulation which significantly distinguishes commissions (extra compensation resulting from superior productivity while working) from overtime (extra compensation for a greater number of hours worked)." 54 F.3d at 658. A DOL opinion letter dated June 29, 1993, which is reproduced in defendant's Record Evidence Filed in Support of Defendant's Motion for Summary Judgment, as part of Exhibit 18 (Docket No. 65), reached the same conclusion. In response to a question whether a police department could pay officers overtime based on hours worked in excess of their regularly scheduled hours, the DOL stated: "As a general rule, the FLSA does not prevent an employer from paying compensation in excess of its standards." (DOL Letter dated June 29, 1993, Record Evidence Filed in Support of Defendant's Motion for Summary Judgment, Docket No. 65.)

The great weight of judicial authority also supports the view that employers may pay overtime on an hourly basis to exempt employees who work more hours in a week then they were scheduled to work. The decision in *Aaron v. City of Wichita, Kan.*, 54 F.3d 652 (10th Cir.1995) has already been noted. The Ninth Circuit recently came to the same conclusion in *Boykin v. Boeing Co.*, 128 F.3d 1279 (9th Cir.1997). In repudiating its earlier statement in *Abshire*, 908 F.2d at 486, that "additional compensation for extra hours worked is ... not generally consistent with salaried status," the *Boykin* the court stated: "Because this statement is dictum, we accord it no precedential value." *Boykin*, 128 F.3d at 1282. To the same effect, though in the context of the analogous executive

exemption, the Fifth Circuit stated in *York v. City of Wichita Falls, Tex.* that: "[p]aying an hourly rate for each hour worked beyond the regular schedule does not defeat the executive exemption." 944 F.2d at 242. For all the foregoing reasons, I conclude that Rite Aid's policy of paying overtime to pharmacists who work more than their regularly scheduled hours does not defeat the professional exemption.[12]

■ 4. Plaintiffs' fourth argument is that Rite Aid docks the "regular" pay of pharmacists who are scheduled to work on the day that Christmas falls, which practice, plaintiffs say, is a disqualifying form of pay reduction "for absences occasioned by the employer or by the operating requirements of the business." 29 C.F.R. § 541.118(a)(1). The problem with this argument is that it is based on an incomplete description of Rite Aid's actual practice with respect to the docking of "regular" pay. When all the undisputed facts are taken into account, the argument loses all its force.

Evidence in the summary judgment record is sufficient to support a finding in plaintiffs' favor that the pay stub of a pharmacist who misses a day of work due to the Christmas closing of his or her store will show that the pharmacist's "regular" pay was reduced by the equivalent of a day's pay. But the same pay stub will also show that, to make up for that reduction, the pharmacist is credited with an equal amount of so-called "hldy-pay," with the result that the pharmacist receives the same "predetermined amount" of gross pay for the week in which Christmas falls that he or she receives every other week of the year. (*See* Rite Aid Corp. Pay Stub, attached as Ex. B to Supp. L. Sweeney Aff., Ex. 2, Appendix, Docket No. 75.) Since the accounting entries reflected on the pay stub are for internal purposes only and have no effect whatsoever on the actual gross or net amount of compensation that any pharmacist receives, they do not defeat salary status.[13]

■ 5. Plaintiffs' fifth and final argument is that salary status is defeated by the fact that their compensation is subject to reduction whenever the number of hours they are regularly scheduled to work is reduced. For example, if a pharmacist transfers (voluntarily or involuntarily) to a store with shorter hours of

12. I do not mean to suggest that an employer may circumvent regulatory requirements through the payment of sham overtime. Suppose, for example, that an employer agrees to pay a professional employee the minimum salary needed to satisfy 29 C.F.R. § 541.3(e), currently $170 per week, plus straight "overtime" at the rate of $17 per hour, in exchange for the employee's agreement to work ten regularly scheduled hours per week plus up to 40 additional hours of "overtime" on request. If the employer fully expected to request each week that the employee work a fluctuating number of hours ranging between 30 and 50 while paying him or her only $170 per week plus "overtime" at the rate of $17 per hour, a strong argument could be made that the "overtime" in reality was regular pay that varied with the quantity of work available. If so, the exemption would not apply, notwithstanding the employer's claim that the employee's base salary of $170, being a predetermined and irreducible "part" of the employee's total compensation, satisfied all regulatory requirements. There is no evidence that Rite Aid employed such practice, howev-

er. For this reason, and because neither party briefed the question of whether a sham exception to the regulations exists, I give this issue no further consideration.

13. The result might be different if, under a pharmacist's employment agreement, Rite Aid agreed to pay the pharmacist, *in addition* to his or her regular weekly pay, an annual Christmas bonus equivalent to a day's pay. If such agreement existed, Rite Aid would be engaged in a form of double counting if it were to claim that the Christmas bonus which, by assumption, it had an independent contractual obligation to pay as *additional* compensation also constituted part of the pharmacist's regular pay for such week. There is no evidence in the summary judgment record, however, that Rite Aid ever agreed to pay any plaintiff a Christmas bonus in addition to his or her regular weekly compensation. For this reason, and because the parties did not brief this issue, I do not address the effect that such double counting would have on the analysis.

operation than the store at which he or she previously worked, the pharmacist may be asked to work a shorter schedule. If so, the pharmacist's base pay will be reduced in direct proportion to the reduction in hours. Plaintiffs say this violates the regulatory requirement that the employee's base compensation not be subject to reduction "because of variations in the ... quantity of the work performed" or "for absences occasioned by the employer or by the operating requirements of the business." *See* 29 C.F.R. §§ 541.118(a) and (a)(1).

Again, the analysis begins with the language of the applicable regulation. Section 541.118(a) provides that an employee will be deemed to be paid on a salary basis if he or she is paid an irreducible, predetermined amount under his or her "employment agreement." Plaintiffs' argument assumes that, once the employer and employee enter into an agreement that provides for the payment of a predetermined amount, that agreement can never be amended, and, therefore, that the predetermined amount that is to be paid under it can never be changed. There is, however, nothing in the regulation that says or implies that employment agreements, once made, cannot be amended, terminated, or superceded. Further, the fact that the changes are imposed unilaterally by the employer does not mean that the employee is not receiving a new, predetermined amount under a new or amended employment agreement; it

means only that the employer has chosen to exercise its common law right to terminate the existing at will agreement between itself and its employee and substitute in its place, upon acceptance by the employee, a new agreement calling for shorter hours and reduced pay.[14]

A DOL opinion letter dated November 13, 1970, attached as Exhibit 2 to defendant's reply memorandum (Docket No. 85) is directly on point. In that letter, an employer facing a need to reduce operating costs asked if its executive, administrative, and professional employees would remain exempt if it were to make a prospective "change from 52 five day workweeks to 47 five day workweeks and 5 four day workweeks," with a proportionate reduction in salary for those affected by the change. (DOL Letter dated Nov. 13, 1970, attached as Ex. 2 to Rite Aid Corporation's Reply Memorandum in Support of Motion for Summary Judgment, Docket No. 85.) The DOL responded: "Section 541.118 does not preclude a bona fide reduction in an employee's salary which is not designed to circumvent the salary basis requirement. A reduction in salary resulting from a temporary reduction in the normal workweek (such as you describe) is, therefore, permissible and will not defeat an otherwise valid exemption, provided that the reduction does not reduce the amount paid to the employee in any workweek to less than the minimum salary required by the regulations...."[15] (*Id.*)

---

14. Again, I do not disregard the likely existence of a sham exception. Suppose, for example, that an employer had a regular practice each Friday of informing its professional staff of the work schedule for the following week and of making prospective adjustments in compensation to reflect any changes. The employer might argue that it was doing nothing more than entering into a new or amended agreement with each employee each week, which new or amended agreement provided for the payment of a predetermined amount of compensation until such agreement was terminated or amended the following week. It might even go so far as to have each professional employee sign a new written

agreement each Friday that memorialized the hours and salary for the upcoming week. It is highly doubtful that such employer could successfully claim the exemption. There is no suggestion here, however, that Rite Aid was engaged in such conduct or that it was acting in bad faith on the handful of occasions on which it reduced a pharmacist's salary in proportion to a cutback in his or her hours.

15. It appears that the DOL had in mind the type of practice considered in footnote 14, *supra*, when it qualified its opinion by noting that the proposed change to a shorter workweek was "bona fide" and "not designed to circumvent the salary basis requirement."

Because Section 541.118, as written and interpreted by DOL, allows employers, without defeating the exemption, to make bona fide modifications to employment agreements and the predetermined amounts of compensation paid under them, plaintiffs' fifth and final argument, like the four that preceded it, must be rejected.

## IV. SUMMARY AND RECOMMENDATION

For all the foregoing reasons, I conclude that plaintiffs are salaried professionals and recommend that Rite Aid's motion for summary judgment (Docket No. 63) be **ALLOWED.**

## V. IMPORTANT NOTICE OF RIGHT TO OBJECT AND WAIVER OF RIGHT TO APPEAL FOR FAILURE TO DO SO WITHIN TEN DAYS

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court **WITHIN 10 DAYS** of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia–Copete,* 792 F.2d 4, 5–6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980); *see also Thomas v. Arn,* 474 U.S. 140, 148–149, 106 S.Ct. 466, 471–472, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).