Robert S. ACKLEY, et al., Plaintiffs,

v.

The DEPARTMENT OF CORRECTIONS OF the STATE OF KANSAS, Defendant.

Civ. A. No. 92–1360–MLB.

United States District Court, D. Kansas.

Feb. 16, 1994.

Brad E. Avery, Kansas Ass'n of Public Employees, Topeka, KS, for plaintiffs.

Charles E. Simmons, Timothy G. Madden, Kansas Dept. of Corrections, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on the parties' cross-motions for summary judgment, pursuant to Fed.R.Civ.P. 56. (Docs. 55 and 56).

Plaintiffs filed this action on July 13, 1992, seeking overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. For purposes of this motion, plaintiffs fall into two categories.[1] The first category is employed by the State of Kansas as correctional officers at the Hutchinson Correctional Facility (HCF). The second category covers plaintiff Larry Peter's, who is employed as a Corrections Manager in the Department of Corrections' office in Topeka.

Larry Peter is a long-time employee of the Department of Corrections. He served as the Assistant Parole Services Administrator. As part of his duties, he helped generate Field Service Orders for the Department's parole services division. He was responsible for establishing the methodology applied by the Department in auditing the Department's parole field offices. Peter reviewed parole violation reports and determined whether a parole violation warrant would be issued. From 1977 until August or September of 1990, Peter had primary responsibility for issuing warrants on behalf of the department. The review process took over 65% of Peter's time.

Peter advised field staff on Department policies and procedures and directed staff as to how particular cases should be handled. He recalled warrants without consultation, and his decision as to whether to recall warrants issued for parolees convicted of Class D and E felonies was based solely on his own judgment. He managed the Department's Crisis Assistance Fund and also advised his superiors on budget matters and gave special reports.

During the time in question, the HCF employees worked a schedule of five days on duty and two days off duty for each seven day period. They work an eight and a half hour shift, during which time they received a 30 minute break.

### Standards for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who 'fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1138 (10th Cir.1991) (quoting Celotex, 477 U.S. at 322, 106 S.Ct. at 2552). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact

---

1. A third category of employees, who are employed at the Topeka Correctional Facility, were also plaintiffs in this suit. The parties have settled those claims.

could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

■■■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however, does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. (emphasis in original). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the non-moving party, *e.g.*, *Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### Constitutional Arguments

Defendant makes two constitutional arguments. First, it contends that the Tenth Amendment precludes application of the FLSA to it. Second, it contends that it is immune from suit by virtue of the Eleventh Amendment.

■■■ Defendant's Tenth Amendment argument is based on the view that *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), is no longer good law. In *Garcia*, the Supreme Court overruled its prior decision in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), and held that application of the FLSA to state and local governments does not violate the Tenth Amendment. *Garcia*, 469 U.S. at 546,

105 S.Ct. at 1015. According to the Court, the political process protected the states against excesses in congressional exercise of power under the Commerce Clause. *Id.* at 556–57, 105 S.Ct. at 1020–21. The defendant argues that the Supreme Court's decisions in *Gregory v. Ashcroft*, 501 U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), and *New York v. United States*, 505 U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), have eviscerated the vitality of *Garcia* and resurrected *Usery*.

The court is not persuaded by defendant's argument. In *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529 (10th Cir.1991), the Tenth Circuit held that *Garcia* remained good law and subjecting firefighters to coverage under the FLSA did not violate the Tenth Amendment. *Id.* at 1541. This court is bound to follow Tenth Circuit's precedent, *United States v. Spedalieri*, 910 F.2d 707, 709 n. 2 (10th Cir.1990), and likewise holds that application of the FLSA to employees of the state correctional system does not violate the Tenth Amendment. *Reich v. State of New York*, 3 F.3d 581, 589–90 (2nd Cir. 1993);[2] *Brinkman v. Dept of Corr. of State of Kan.*, 804 F.Supp. 163, 164–65 (D.Kan. 1992).

■■■ Defendant's second argument is that Congress did not express a clear intent to abrogate the State's Eleventh Amendment immunity to suit when it amended the FLSA. The Eleventh Amendment, enacted in response to the Supreme Court's decision in *Chisolm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), limits the power of the federal courts to hear suits brought against a state. Defendant relies on *Afscme v. Corrections Dept. of State of New Mexico*, 783 F.Supp. 1320 (D.N.M.1992), wherein the court held that Congress did not make its intent to abrogate the States' immunity unequivocally clear when it adopted the 1974 amendments to the FLSA. *Id.* at 1326.

---

**2.** In *Reich v. State of New York*, the court interpreted *Gregory* to hold only that courts should not construe a federal statute in a manner that "would upset the usual constitutional balance of federal and state power," absent a plain statement of intent to do so in the text of the statute.

*Id.* at 589 (citing *Gregory*, 501 U.S. at ——, 111 S.Ct. at 2401). The court went on to find that Congress' intent to apply the FLSA to law enforcement agencies was unmistakably clear. *Id.* at 590.

■ With all due respect for our brethren in New Mexico, the court reaches a different conclusion. Congress can abrogate the States' Eleventh Amendment immunity from suit through the exercise of its Commerce Clause power. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 14–15, 109 S.Ct. 2273, 2281–82, 105 L.Ed.2d 1 (1989). Congress must manifest its intention to do so in "unmistakable language in the statute itself." *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985). The court is convinced that Congress intended to abrogate the States' Eleventh Amendment immunity when it amended the FLSA in 1974 to include "public agencies" within the scope of "employer" subject to suit. 29 U.S.C. § 203(x). Congress reaffirmed that intention when it amended the FLSA in 1985 in the wake of *Garcia* to give the states a grace period until April 15, 1986, before the FLSA became applicable to them. Pub.L. No. 99–150, 99 Stat. 787 § 2(c)(1) (1985).

The court holds that plaintiffs' suit is not barred by the Eleventh Amendment. *Reich v. State of New York*, 3 F.3d at 590; *Hale v. State of Arizona*, 967 F.2d 1356 (9th Cir. 1992); *Brinkman*, 804 F.Supp. at 165.

*Larry Peter*

■ The FLSA requires the payment of overtime compensation for employees who work in excess of forty hours per week. 29 U.S.C. § 207(a). Employees in an executive, administrative, or professional capacity are exempt from the overtime pay requirements. 29 U.S.C. § 213(a)(1). Under the statute, these terms are left for definition and delineation by regulations promulgated by the Department of Labor. The employer who asserts the exemption has the burden of establishing the exemption by clear and affirmative evidence. *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984).

Defendant argues that Peter falls within the administrative exemption. Defendant would have the court apply the regulation found at 29 C.F.R. § 541.2(e)(2), the so-called "short test." Under the short test, an employee is deemed exempt if (1) their "primary duty consists of … [t]he performance

of office or nonmanual work directly related to management policies or general business operations of [the] employer or [the] employer's customers, and (2) such duty includes work requiring the exercise of discretion and independent judgment." *Id.*

■ Peter responds that the exemption is inapplicable, but assuming it does apply, he purports to controvert whether his duties fall within the exemption. Peter's first argument is that the defendant failed to raise the administrative exemption in its responsive pleading and is estopped from now raising it. *See* Fed.R.Civ.P. 8(c). The court finds Peter's interpretation of Rule 8(c) too stringent. Peter has been on fair notice of the defendant's exemption defense from the outset of this case. The defendant denied Peter's allegation that he was a nonexempt employee. Additionally, the defendant's claim of exemption is clearly disclosed in the pretrial order. In the court's judgment, these actions were sufficient to invoke the defense. *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir. 1991), *cert. dismissed* — U.S. ——, 112 S.Ct. 1310, 117 L.Ed.2d 510 (1992), does not hold to the contrary. In *Renfro*, the court found the City had waived its defense of exemption by failing to raise it until it filed a motion to alter or amend. The court went on to state, "[T]he district court properly found that City's failure to affirmatively plead the defense *prior to the grant of summary judgment* … was an effective waiver." *Renfro*, 948 F.2d at 1539. In the case at bar, the defendant pled the exemption well before this time. The court finds the exemption was properly raised.

■ Peter argues he is not compensated on a "salary basis" as contemplated by the regulations and therefore the administrative exemption is inapplicable to him. According to 29 C.F.R. § 541.118:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of varia-

tions in the quality or quantity of the work performed.

Peter contends that his compensation is subject to reduction by virtue of the operation of K.S.A. 75–2949e and K.A.R. 1–5–20(a). The former statute enumerates a nonexclusive list of grounds for dismissal, demotion, or suspension of a permanent employee. The latter regulation provides that an employee's salary may be reduced by reason of less than satisfactory performance according to a current performance evaluation. According to Peter, these potential reductions, which relate to reasons other than infractions of safety rules of major significance (29 C.F.R. § 541.118(a)(5)), are inconsistent with a salaried status.

The defendant responds that the reduction in pay authorized K.A.R. 1–5–20(a) is directed towards future work and does not apply to reduce pay for work previously performed. Defendant argues that Peter's theory is unsound because it would mean that no manager could ever have their employment contract renegotiated for a lower salary regardless of their past performance.

The court finds the defendant's position to be the better view. The intent of § 541.118 is to prevent an employer from circumventing the overtime compensation requirements of the FLSA by purporting to pay the employee a "salary" while retaining the ability to adjust the employee's pay depending on the quality or quantity of the work. In such a circumstance, an employee's pay is not fixed, but is contingent in character. Future pay adjustments do not implicate the regulation's intent because the employee knows before he or she performs the work what their pay will be. Accordingly, the court finds that Peter is compensated on a "salary basis" as contemplated by the regulations.

■ Peter argues that the defendant's subsequent payment of overtime compensation to Peter in the amount of $568.30 is inconsistent with the view that Peter is a salaried employee. When coupled with the fact that Peter's job duties did not change after he became a nonexempt employee in April, 1992, Peter contends this must mean he was a nonexempt employee throughout.

The court does not agree with Peter's position. The defendant's payment of overtime came after it determined that Peter was a nonexempt employee in April, 1992. Defendant may have simply been acting in a cautious manner and seeking to preclude additional liability in the future in the event its view of Peter's employment status turned out to be erroneous. Defendant's prudence should not be characterized as an admission of liability. The court must therefore focus its inquiry on whether Peter's duties fall within the "short test."

*Directly Related to Management Policies or General Business Operations*

■ According to the regulations, the phrase "directly related to management policies or general business operations" describes those types of activities relating to the administrative operations of a business as distinguished from production or sales work. 29 C.F.R. § 541.205(a). The uncontroverted facts establish that Peter's duties directly relate to the administrative functions of the Department of Corrections. In the context of Peter's job, supervising parolees is akin to production work. Peter spent relatively little time in the field supervising parolees. Rather, he worked in the office in Topeka, preparing instructional manuals, creating Department policies in the form of Field Service Orders, issuing and recalling warrants, and advising parole officers in the field how to interpret Department policies and handle particular situations. The foregoing tasks are in the nature of administrative functions, for they relate to the promulgation and implementation of the Department of Corrections' policies. The court finds that the first requirement of the short test is established.

*Exercise of Discretion and Independent Judgment*

According to the regulation found at 29 C.F.R. § 541.207(a):

[T]he exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term ... implies that the person has the authority or power to make an

independent choice, free from immediate direction or supervision and with respect to matters of significance.

Peter argues that he did not exercise discretion and independent judgment because he relied on outside criteria in addition to the Department's policy guidelines to make decisions. Peter does not state what those outside criteria are, and the court will not assume that those criteria are so restrictive as to remove the element of independent judgment from Peter's decisions. The uncontroverted facts establish that Peter regularly exercised considerable independent judgment and discretion. The majority of Peter's time was spent reviewing warrants. Peter performed this duty without consulting any other person. It is undisputed that a parolee's parole is not automatically revoked when the parolee violates a condition of his parole. It must follow that the decision to revoke a parolee's parole rests to a certain degree on the reviewing officer's judgment as to the seriousness of the violation. Peter exercised this judgment. It is also undisputed that Peter's decision to recall warrants for parolees convicted of Class D and E felonies was based solely on what he thought was the best thing to do. While Department policies and guidelines were useful to his determination, the nature of the work is antithetical to the notion of a rote and mechanical decision-making process.

Beyond the time he spent reviewing warrants, Peter also exercised discretion and independent judgment in managing the Department's Crisis Intervention Assistance Fund from 1985 or 1986 until October, 1990. In this capacity, Peter disbursed thousands of dollars to parolees for items such as food, shelter, and transportation, when he deemed it necessary. Peter made these disbursements without consulting others. The court finds that the second requirement of the short test is established. *See Reich v. State of Wyo.*, 993 F.2d 739, 743 (10th Cir.1993).

The court holds that Peter is exempt from the FLSA under the administrative exemption.

## HCF Employees

■ Plaintiffs seek overtime compensation for one half hour for each shift. They contend that they remain on duty during their half hour break. The defendant responds that even though the plaintiffs work 42.5 hours every week, they are not entitled to overtime compensation because of 29 U.S.C. § 207(k), which provides an exemption to the strict 40 hour workweek for public agencies that employ persons in fire protection or law enforcement activities.

■ Pursuant to the § 207(k) exemption, a public employer is authorized to adopt a work period of between 7 and 28 days and calculate the plaintiffs' hours for regular and overtime pay according to the rates explained in 29 C.F.R. § 553.230. *See Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1150 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). The employer has the burden of proving it has adopted a § 207(k) workweek exemption by " 'clear and affirmative evidence.' " *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802 (11th Cir.1992) (citing *Donovan*, 725 F.2d at 581).

The defendant has produced no evidence that it adopted a § 207(k) workweek exemption, much less that it defined the HCF employees' work period as 28 consecutive days. In fact, the evidence suggests the contrary. In an interdepartmental memorandum pertaining to overtime compensation written on May 1, 1990, the defendant's personnel director made the following statement: "Employees determined to be nonexempt shall be eligible for overtime compensation for all hours worked in excess of 40 hours in a work week." (emphasis added) This memorandum indicates that the defendant compensated the HCF employees according to the general rule of § 207(a). The defendant's § 207(k) argument appears to have been raised only after suit was filed in an effort to avoid liability. The defendant has produced no document that reflects a contemporaneous decision to adopt a § 207(k) exemption during the time in question.

The court finds that the defendant has not met its burden of proving that it adopted a § 207(k) workweek exemption.

■ The defendant argues that it adopted a bona fide meal period pursuant to 29 C.F.R. § 785.19. In *Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir.1992), the Tenth Circuit held that the proper standard for determining compensability of a meal period is whether the officer is " 'primarily . . . engaged in work-related duties during meal periods.' " *Id.* at 432 (quoting *Lamon*, 972 F.2d at 1145).

After reviewing the motions carefully, the court finds that a genuine issue of material fact exists as to whether the defendant adopted a bona fide meal period. The motions paint widely divergent pictures of the restrictions upon the HCF employees during their half hour break. The disputed issues are similar to those identified by Judge Crow in *Brinkman*, 804 F.Supp. at 173.

The motions for summary judgment are denied with respect to the HCF employees.

### Liquidated Damages

■ The defendant asserts it should not be liable for liquidated damages because it had reasonable grounds for believing that its actions were not in violation of the FLSA. 29 U.S.C. § 260. The good faith defense to liquidated damages can be invoked only if the employer shows both that it acted in good faith and that it had reasonable grounds for believing that its actions did not violate the Act. *Doty v. Elias*, 733 F.2d 720, 725–26 (10th Cir.1984). The employer bears the burden of proving its § 260 defense. *Sinclair v. Automobile Club of Oklahoma, Inc.*, 733 F.2d 726, 730 (10th Cir.1984).

■ In its response to the plaintiffs' motion for summary judgment (Doc. 65, p. 4), defendant states that it relied on the case law as set out in its Memorandum for summary judgment. As a general rule, the court is skeptical that a defendant's reliance on its own interpretation of the law can satisfy its burden. The danger of such an approach is that it allows the defendant to be the arbiter of its own compliance with the law. The most logical step for a defendant concerned

about the legality of its compensation plan is to seek an opinion from the relevant government agency, the Wage and Hour Division of the Department of Labor. In this case, the defendant never sought an opinion from the Wage and Hour Division concerning the legality of its compensation scheme. *Doty*, 733 F.2d at 726; *Cf. Kinney v. District of Columbia*, 994 F.2d 6, 12 (D.C.Cir.1993) (defendant's consultation with the Department of Labor, National League of Cities, its own attorneys and accountants deemed insufficient to show that it had a reasonable basis for believing it was in compliance). Assuming a defendant can rely solely on its own interpretation of case law for purposes of establishing the § 260 defense, the factual situations presented in the case law would have to be very closely analogous for its reliance to be reasonable. In the case at bar, defendant's reliance on the case law contained in its memorandum is tenuous and fails to satisfy its burden. The defendant must have known that its constitutional arguments had been rejected by the weight of authority. The Tenth Circuit rejected the argument that the FLSA violates the Tenth Amendment in *Renfro v. City of Emporia, supra*, which defendant did not even cite.[3] Other courts had rejected the defendant's Eleventh Amendment argument. *E.g., Hale v. State of Arizona*, 967 F.2d 1356 (9th Cir. 1992). The defendant's reliance on case law relative to the meal times was also not reasonable. Defendant did cite to the latest Tenth Circuit pronouncement on the issue, *Armitage v. City of Emporia, supra*. Defendant relied on the district court decision (Doc. 57, p. 19), and neglected to note that *Armitage* had been reversed on appeal. Furthermore, the fact situations involved in the other meal period cases are not so closely analogous to this case as to give the defendant confidence that its legal position was correct.

The court holds that the defendant cannot establish the § 260 defense.

IT IS THEREFORE ORDERED that defendant's motion (Doc. 56) for summary judg-

---

**3.** The court acknowledges that *Gregory v. Ashcroft* and *New York v. United States* postdated the Tenth Circuit's decision in *Renfro*. It was there-

fore within the permissible scope of advocacy for defendant's counsel to argue that these Supreme Court decisions had effectively overruled *Renfro*.

ment is granted as to plaintiff Peter and denied as to the HCF employees. Plaintiffs' motion (Doc. 55) for summary judgment is denied.