**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENK CIRCUIT

IN RE: WAL-MART STORES, INC.,
FAIR LABOR STANDARDS ACT
LITIGATION, MDL 1139,

------------------------

JERRY ARCHULETA; BILLY
PRESLEY; CINDY WACASTER;
MICHAEL FIORENZI, for and on
behalf of themselves and other
employees similarly situated,

        Plaintiffs - Appellees,

    v.

WAL-MART STORES, INC., a
Delaware corporation,

        Defendant - Appellant.

Nos. 03-1432 and 03-1473

JOEL D. YATES, II; JEFFREY
GOETZINGER; ROBERT BERRY;
WALTER LANE HENKHAUS, JR.,
for and on behalf of themselves and
other employees similarly situated,

        Plaintiffs - Appellees,

    v.

No. 03-1434

WAL-MART STORES, INC., a
Delaware corporation,

                Defendant - Appellant.

CHRIS HENDERSON, individually
and as representative of all other
District and Regional Managers
similarly situated,

                Defendant.

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NOS. 96-Z-91139 (CBS)   , 95-Z-1705 (CBS) ,
95-Z-2050 (CBS), 97-Z-257 (CBS)   )**

---

Steven J. Merker of Dorsey & Whitney LLP, Denver, Colorado (Gregory S. Tamkin of Dorsey & Whitney LLP, Denver, Colorado; Robert P. Davis and David M. Gossett of Mayer, Brown, Rowe & Maw LLP, Washington, D.C., with him on the briefs), for Defendant - Appellant.

Gerald L. Bader, Jr. of Bader & Associates, LLC, Aurora, Colorado (Renée B. Taylor of Bader & Associates, LLC, Aurora, Colorado; Franklin D. Azar and Jon Neil Barclay of Franklin D. Azar & Associates, Aurora, Colorado, with him on the brief), for Plaintiffs - Appellees.

---

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

     Under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201

*et seq.*, an employer may not employ a person for more than 40 hours per workweek unless the employee receives overtime compensation of at least one-and-a-half times the regular hourly rate for hours exceeding 40. *Id*. at § 207(a)(2)(c). The FLSA creates an exemption to its overtime requirement, however, for people "employed in a bona fide executive, administrative, or professional capacity." *Id*. at § 213(a)(1). A Department of Labor (DOL) regulation states that an employee comes within the "professional" exemption when the employee's job functions satisfy a duties test and the employee is paid on a salary basis. *See* 29 C.F.R. § 541.3 (2003). This consolidated appeal addresses the second part of this two-part test: the salary-basis requirement.

The plaintiffs in the cases before us, who are full-time pharmacists employed by Defendant Wal-Mart, contend that they were not paid on a salary basis because of Wal-Mart's alleged practice of prospectively reducing their salaries when workloads decreased. The district court agreed and granted summary judgment in the plaintiffs' favor. We reverse and remand for further proceedings. An employer's practice of prospectively changing salaries does not convert salaried employees to hourly employees entitled to overtime rates unless the purported "salary" becomes a sham—the functional equivalent of hourly wages. The plaintiffs have not established incontrovertibly that Wal-Mart changed salaries so often that its full-time pharmacists essentially were paid an

hourly wage.

I. **BACKGROUND**

When this litigation commenced, Wal-Mart employed over 6,000 pharmacists in some 2,000 pharmacies. Of these, nearly 4,000, including the plaintiffs, were full-time employees. According to Wal-Mart's Full-Time Pharmacist Compensation Policy statement, "Each full-time pharmacist is paid by salary." Aplt. App. at 1358. Full-time pharmacists were assigned a certain number of base hours, typically 90 hours for two weeks, and were paid a specified minimum salary each pay period. They received certain benefits provided to management, such as bonuses, insurance, and salary continuation if they became unable to work. Also, they were paid for any time worked over base hours. Wal-Mart calculated the hourly rate for such additional time by dividing a pharmacist's minimum salary by his or her base hours. Under the policy statement the full-time employee "should always turn in the minimum of the base salary hours," unless the employee has taken a full day off without pay for personal reasons. *Id*. In other words, the employee was to report having worked the minimum base-salary hours even if the employee had not done so, except when the employee had taken a full day off without pay.

Wal-Mart pharmacists filed two actions against Wal-Mart on July 7, 1995. One group filed *Presley v. Wal-Mart Stores, Inc.,* in the United States District

Court for the District of Colorado, seeking relief for similarly situated pharmacists nationwide. Others filed *Fiorenzi v. Wal-Mart Stores, Inc.*, in state court, seeking relief on behalf of similarly situated pharmacists in Colorado. Wal-Mart removed *Fiorenzi* to federal court, where the two cases were consolidated. (We shall refer to the consolidated case as *Presley.*) The district court conditionally certified the case as an opt-in collective action under 29 U.S.C. § 216 (b). Later, some pharmacists who had not opted into *Presley* filed *Yates v. Wal-Mart Stores, Inc.*, in Colorado federal district court.

The plaintiffs do not contest that under Wal-Mart's written compensation policy, full-time pharmacists were to be paid on a salary basis. Instead, they assert that Wal-Mart's actual policy involved prospectively reducing full-time pharmacists' base hours with a commensurate reduction in salary in response to sales declines, a policy that they contend is inconsistent with the DOL's definition of salary. They point to several affidavits by pharmacists who asserted that their salaries (and base hours) were reduced in response to seasonal drops in business.

The district court granted the *Presley* plaintiffs' motion for summary judgment after determining that Wal-Mart "engaged in a practice or policy of reducing base hours and base pay for the company's own interest." *In re Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1219, 1222 (D. Colo. 1999). The district court then held that summary judgment should also be granted to the *Yates* plaintiffs

based on collateral estoppel (issue preclusion). Wal-Mart appealed both judgments, and *Presley* and *Yates* were consolidated for this appeal.

On appeal Wal-Mart contends that (1) summary judgment was improper in *Presley* and (2) even if that summary judgment was proper, it should have had no preclusive effect in *Yates,* so the *Yates* summary judgment was improper. In its opening brief on appeal Wal-Mart also seeks summary judgment in its favor; but at oral argument counsel clarified that what it seeks is dismissal of the *Presley* plaintiffs' complaint for failure to state a claim. Taking jurisdiction under 28 U.S.C. § 1291, we hold that the *Presley* complaint states a proper claim, but we set aside the summary judgments in both *Presley* and *Yates* and remand for further proceedings. Viewing the record in the light most favorable to Wal-Mart, we cannot conclude that Wal-Mart altered the salaries of full-time pharmacists with such frequency that the purported salary amounted to an hourly wage. We therefore remand for further factual determinations.

## II. **DISCUSSION**

### A. Professional Exemption

The FLSA does not define *professional*; rather, it delegates to the DOL the responsibility of "defin[ing] and delimit[ing]" the term through regulations. 29

U.S.C. § 213(a)(1)[1]; *see Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996).  Under the DOL regulation an employee must satisfy two requirements to be an "employee employed in a bona fide professional capacity." 29 C.F.R. § 541.3 (2003).[2]  First, the employee must have certain duties.  *Id.*  It is undisputed that the plaintiffs satisfied this requirement.  Second, the employee must be

> compensated for services on a salary or fee basis at a rate of not less than $170 per week . . .  exclusive of board, lodging, or other facilities:  *Provided*, That this paragraph shall not apply in the case of an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof . . . .

29 C.F.R. § 541.3(e) (2003).  The regulation makes clear that pharmacists are not covered by the exception for employees who are the holders of licenses in the medical field or its branches.  *See* 29 C.F.R. § 541.314(c) (2003) ("In the case of

---

[1]  The relevant language of the statute provides:

(a) Minimum wage and maximum hour requirements
     The provisions of section 206 [minimum wage] . . . and section 207 [maximum hours] of this title shall not apply with respect to--
          (1) any employee employed in a bona fide executive, administrative, or professional capacity . . ., or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the [Administrative Procedures Act]) . . . .

29 U.S.C. § 213(a)(1).

[2]The DOL has issued revised regulations defining *professional* effective August 23, 2004.  We apply the regulations as they existed from 1993 to1998, the time period in which the plaintiffs' complaints arose.

medical occupations, the exception [subsection (e)] from the salary or fee requirement does not apply to pharmacists . . . .").  Thus, a pharmacist must be paid on a salary basis under § 541.3(e) to meet the requirements of a "professional" exempt from the FLSA's maximum-hour and overtime requirements.

The first part of the regulation's definition of salary states:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.  Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.  This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (2003).  The last sentence—which permits withholding salary from an employee who misses an entire week of work—is the initial indication that the regulation does not conform to the common understanding of the term *salary*.

Further contrary to the common understanding, the regulation permits payments in addition to salary, such as the amounts received by Wal-Mart pharmacists for time worked beyond base hours.  The regulation states:

*Minimum guarantee plus extras*.  It should be noted that the

-8-

salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment.

29 C.F.R. § 541.118(b) (2003). *See Aaron v. City of Wichita,* 54 F.3d 652, 658 (10th Cir. 1995) (compensation for overtime hours is not inconsistent with the salary basis of payment).

Moreover, the regulation permits deductions for voluntary days off:

(1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

29 C.F.R. § 541.118(a)(1)-(2) (2003). Deductions are also permitted in certain circumstances for absences due to sickness or disability, *id*. at § 541.118(a)(3) (2003), or for safety-rule infractions, *id*. at § 541.188(a)(5) (2003). Whether an improper deduction defeats the exemption from overtime regulations depends on the circumstances:

The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when

there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6) (2003).

Although we may well have defined *salary* rather differently than the DOL, we must recognize that "the salary-basis test is a creature of the Secretary[] [of Labor's] own regulations," and therefore "his interpretation of it is . . . [ordinarily] controlling.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

B. Wal-Mart's Payment Practice

According to the plaintiffs, Wal-Mart failed to pay them "salaries" as defined by the regulation, because it sometimes prospectively reduced their pay in proportion to reductions in their assigned base hours for reasons such as "business volume decreases" or "seasonal decreases" in prescription sales. Aplee. Br. at 43-44. For the factual predicate of this argument, the plaintiffs rely on affidavits from several pharmacists. Pharmacy manager Ronald Moore asserted:

> During the summer months pharmacy sales decreased. I was called on a monthly basis by my District Manager Larry Tally [sic] and given a set number of hours that were to be cut . . . . It was my responsibility to then call each store and tell the pharmacy manager to cut all pharmacist's [sic] hours, full-time included, by sending them home early or to cut an entire

-10-

full day out [of] the pharmacists' schedules.

*Id.* at 1216. Similarly, the affidavit of pharmacist Theresa O'Neill states:

> During the summer months pharmacy sales decreased. My hours were cut unpredictably from 45 per week to as low as 36 per week. Because the number of prescriptions filled was not high enough to justify me working my 45 hours per week, my payroll had to be reduced. The District Manager Hiram Mojica told the pharmacy manager to cut hours. Not only were my hours intentionally reduced, but so were the hours of the other full-time pharmacists.

*Id.* at 1231. According to the affidavit of Karen Zielke: "While working at the Orlando Florida store, Mr. Schneider reduced the number of hours pharmacists worked from 10 hours to 8 hours per day. Mr. Schneider explained that this was to reduce payroll since business is slow during summer months." *Id.* at 1290. Other supporting affidavits are from Donna Burcham ("The District Manager decided to close our pharmacy one hour early on Saturday because business was slow." *Id.* at 1117.); Bonnie Bess ("During the summers 1995 and 1996, the District Manager Randy Miller requested the hours of the pharmacists be reduced. . . . My hours were reduced, . . . my compensation also was reduced." *Id.* at 1110.); Amy Balmer ("[M]y District Manager Vic Edwards requested that I work less than my regularly scheduled week." *Id.* at 1089.); Billy King ("My hours were reduced from 45 per week to 44.5 per week." *Id.* at 1195.); Christopher Nevers ("District Manager Randy Simms reduced my scheduled work week from 45 hours to 40 hours per week. Mr. Simms explained that the pharmacists [*sic*] payroll was over budget." *Id.*

at 1223.); and Joan Winningham ("[M]y hours were reduced to 40 a week [from 45]." *Id*. at 1283.). The plaintiffs also refer to payroll documents for Scott Kurzawa, Rogers Chase, and Robert Beitscher, which purportedly show base-hour decreases for "seasonal decrease[s]," "business volume decrease[s], " and "lack of volume." *Id*. at 746, 3306.

In addition, the plaintiffs point to the deposition testimony of several district managers to illustrate Wal-Mart's alleged practice of reducing full-time pharmacists' hours in response to sales declines. District manager Kurt Barry said: "We would look at the number of prescriptions in the business and the sales of a particular store and make decisions on each store individually. So in some cases when business decreased, we would decrease the pharmacists' base hours at the particular store." *Id*. at 2580. And district manager Mark Schneider testified that he changed a pharmacist's base hours due to a change in store hours. The plaintiffs also produced a memorandum from district manager Norm Beck to all pharmacy managers in Beck's district, thanking them for "work[ing] as a team" and "accomplish[ing] our goal" in cutting back pharmacist hours. *Id*. at 987. The memorandum lists 15 stores with reduced hours.

Wal-Mart counters this evidence with affidavits from district managers claiming that they reduced the hours of only hourly, nonexempt employees. Larry Talley, pharmacist Moore's district manager, stated, "Payroll hours subject to

reduction during the summer months included only those employees paid on an hourly basis such as relief pharmacists, part-time pharmacists, and hourly paid associates." *Id.* at 2201. Hiram Mojica, pharmacist O'Neill's district manager, made an identical statement. *Id.* at 2232. Randy Miller, pharmacist Bess's district manager, stated, "I never told, instructed, or required Bonnie Bess to report less than her base salary hours in order to reduce payroll for summer budget concerns, or any other reason." *Id.* at 1925. Pharmacists Balmer's and Nevers's statements are also contradicted by that of their district managers, Vic Edwards ("Contrary to [Balmer's] affidavit, I never told her to cut back her scheduled hours." *Id.* at 1839.) and Bill Therriault ("Contrary to Mr. Nevers' affidavit, he was never scheduled to work 90 in any pay period. The attached Full-Time Compensation Statement clearly indicates his salary was based on a 40 hour schedule or 80 per pay period." *Id.* at 2213.). Finally, Wal-Mart offers Norm Beck's deposition testimony clarifying that his memorandum to pharmacy managers was directed at reducing total weekly pharmacist hours per store in his district and "involv[ed] eliminating some relief pharmacists," but "would not have involved changing pharmacists' base." *Id.* at 3873.14. In sum, Wal-Mart contends that only two or three of its 150 district managers prospectively reduced work schedules and salaries of pharmacists under their supervision and that only a few of its 4,000 pharmacists received such a reduction.

C. <u>Salary-Basis Test</u>

The general rule set forth in § 541.118(a) is that

> [a]n employee will be considered to be paid "on a salary basis" . . . if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

The parties' dispute centers on the meaning of the term *predetermined amount*. The plaintiffs emphasize the requirement that the "predetermined amount" not be "subject to reduction because of variations in the quality or quantity of the work performed." They also rely on the prohibition in §541.118(a)(1) against "deductions from . . . predetermined compensation . . . for absences occasioned by . . . the operating requirements of the business," and the statement in that paragraph that "if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available." They conclude that Wal-Mart's "practice" of prospectively reducing pharmacists' base hours with a corresponding reduction in pay violates the salary-basis test because the "predetermined amount" varied in accordance with the employer's business needs or "the quantity of work performed" even when the pharmacist was "ready, willing, and able to work." Aplee. Br. 25-28.

We do not read the regulation so broadly. Under the text of § 541.118 and the DOL's interpretation of this regulation, an employer may prospectively reduce salary to accommodate the employer's business needs unless it is done with such

-14-

frequency that the salary is the functional equivalent of an hourly wage.

        1. *Text of § 541.118*

Although § 541.118 does not define "predetermined amount," the natural reading of the term is that it refers to the amount previously agreed on for the period for which the salary is to be paid, not an amount that had been agreed on for some earlier period. Nothing in the language of the regulation suggests a contrary reading. Section 541.118 prohibits various deductions from the contractual salary, but it contains no explicit requirement that the salary set ("determined") for one pay period be continued to the next. Paragraphs (2) and (3) of § 541.118(a) permit deductions from the "predetermined amount" for full-day absences caused by the employee; paragraph (4) prohibits deductions for employee absences due to jury duty, being called as a witness, or temporary military leave; and paragraph (5) permits deductions for violations of major safety rules. All these are deductions during a pay period for which the salary has already been set. Likewise, the provisions relied upon by the plaintiffs—requiring (1) that the predetermined amount "not [be] subject to reduction because of variations in the quality or quantity of the work performed," 29 C.F.R. § 541.118(a), and (2) that deductions from the predetermined compensation not be made "for absences occasioned . . . by the operating requirements of the business," *id*. at § 541.118(a)(1)—can readily be understood as directed at adjustments that are made (1) with respect to a pay period

for which salary had been set and (2) as a result of events during that pay period.

Thus, we would read the regulation as prohibiting only reductions in pay made in response to certain events in a period for which the pay had been set, not salary reductions to take effect in future pay periods. In any event, even if there is an ambiguity, the ambiguity is resolved by the DOL's opinion letters.

2. *DOL Opinion Letters*

The DOL's Wage and Hour Division issues opinion letters "to explain the[] requirements [of the FLSA and its regulations] and how they apply to particular circumstances." Wage & Hour Division, "Opinion Letters" at http://www.dol.gov/esa/whd/opinion/opinion.htm (last visited Dec. 17, 2004). Several are issued each year. *See id.* (displaying seven FLSA opinion letters for 2004, five for 2003, eleven for 2002, and nineteen for 2001). The DOL considers these opinion letters to be "rulings," 29 C.F.R. 790.17(d); and under the Portal to Portal Act, "no employer shall be subject to any liability or punishment . . . under the [FLSA] . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, *ruling*, approval, or interpretation of the [Administrator of the DOL's Wage and Hour Division] . . . ." 29 U.S.C. § 259(a) (emphasis added). *See Frank v. McQuigg*, 950 F.2d 590, 598-99 (9th Cir. 1991) (Postal Service is protected from liability for failure to pay overtime in conformity with FLSA requirements due

to good-faith reliance on opinion letter issued by the Administrator approving payment scheme).

Given their provenance and legal effect, these opinion letters are entitled to great weight when they interpret the DOL's own (ambiguous) regulations. *See Auer,* 519 U.S. at 461 ("Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is . . . controlling unless 'plainly erroneous or inconsistent with the regulation.'" (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989))). *See also Barnhart v. Walton*, 535 U.S. 212, 217 (2002) ("Courts grant an agency's interpretation of its own *regulations* considerable legal leeway" (citing *Auer*, 519 U.S. at 461) (emphasis added)); *Humanoids Group v. Rogan,* 375 F.3d 301, 306 (4th Cir. 2004) ("'[A]gency interpretations that lack the force of law (such as those embodied in opinion letters and policy statements) do not warrant *Chevron*-style deference when they interpret ambiguous *statutes* but do receive deference under *Auer* when interpreting ambiguous *regulations*.'" (quoting *Akzo Nobel Salt, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 212 F.3d 1301, 1304 (D.C. Cir. 2000))). *Cf. United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (agency interpretations of *statutes* in formats such as ruling letters are not due *Chevron* deference if not promulgated in exercise of congressionally delegated authority to make rules carrying the force of law). We see no reason to accord less deference to Wage & Hour opinion letters

than the Supreme Court gave to the position of the DOL set forth in an amicus brief to the Court, *see Auer*, 519 U.S. at 461, particularly when, as shown below, the letters reflect a consistent view over an extended period of time, *cf. id.* at 462 (deferring to Secretary of Labor's brief, noting that it was not a "*post hoc rationalization*[] advanced by [the] agency . . . to defend past agency action" and that there was "no reason to suspect that the interpretation [did] not reflect the agency's fair and considered judgment" (internal quotation marks omitted)).

The DOL has issued three opinion letters addressing employers who, when facing economic slowdowns, inquired whether reducing the work schedule of their salaried employees with a corresponding reduction in pay would render the employees subject to the FLSA overtime provisions:  U.S. Department of Labor, *Wage & Hour Opinion Letter dated February 23, 1998*, 1998 WL 852696; U.S. Department of Labor, *Wage & Hour Opinion Letter dated March 4, 1997*, 1997 WL 998010; U.S. Department of Labor, *Wage & Hour Opinion Letter dated November 13, 1970*, 1970 WL 26462.  These letters confirm our reading of the salary-basis regulation:  the requirement that exempt employees receive at least a "predetermined amount" as salary does not preclude an employer from making occasional prospective salary reductions before the affected pay period in response to business needs.

The 1970 letter, signed by the Administrator of the Wage & Hour Division,

responded to an employer in the aerospace industry that wished to reduce operating costs by having 47 five-day workweeks per year and five four-day workweeks at the end of the calendar year. 1970 WL 26462 at 1. During the four-day workweeks the employer wished to make a proportionate reduction in salary for its exempt employees. *Id*. When asked whether this would violate the salary-basis test and render the employees nonexempt, hourly employees, the Administrator said, "A reduction in salary resulting from a temporary reduction in the normal workweek . . . is . . . permissible and will not defeat an otherwise valid exemption." *Id*. Although the Administrator clearly advised that such prospective salary reductions are permissible, he also warned that "[r]ecurrent changes in an employee's status may lead to an across-the-board denial of the exemption." *Id*. at 2.

The 1997 opinion letter, signed by a subordinate official of the Wage & Hour Division, reiterated the DOL's position in response to an employer in the mental-health field that wished to reduce its workweek by eight hours per week with a commensurate reduction in salary to accommodate the reduction in state spending on its programs. 1997 WL 998010 at 1. The letter said:

> As stated in the Administrator's opinion letter of November 13, 1970 . . ., Section 541.118 does not preclude a bona fide reduction in an employee's salary which is not designed to circumvent the salary basis requirement. A reduction in salary resulting from a reduction in the workweek under the circumstances you describe will not defeat an otherwise valid . . . exemption.

*Id*.

The next year the Acting Administrator of the Wage and Hour Division responded to the inquiry of a large industrial manufacturer about a plan to take effect when "persistent work shortages occur in a defined work-unit." 1998 WL 852696 at 1. The employer wished to reduce the work hours for the employees in the affected unit to 32 per week through the end of the fiscal year, with a proportionate reduction in pay. *Id*. The opinion letter explained, "[W]e have consistently taken the position that a bona fide reduction in an employee's salary does not preclude salary basis payment as long as the reduction is not designed to circumvent the requirement that the employees be paid their full salary in any week in which they perform work." *Id*. at 2. According to the letter, "[A] fixed reduction in salary effective during a period when a company operates a shortened workweek due to economic conditions would be a bona fide reduction not designed to circumvent the salary basis payment." *Id*.

These opinion letters speak directly to Wal-Mart's alleged practice of reducing pharmacists' salaries to suit its operational needs. Much like the industrial employer facing work shortages, Wal-Mart could reduce its pharmacists' work hours and salaries to decrease its operational costs in light of declining prescription sales. So long as Wal-Mart's practice was not too common, the reduction in base hours would be a "bona fide reduction not designed to

circumvent" the salary-basis requirement. *Id*.

In response, the plaintiffs urge that we must construe narrowly the exemptions to the salary-basis test, placing on employers the burden of proving they fall within the exemption. *See Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995). "But that is a rule governing judicial interpretation of statutes and regulations, not a limitation on the Secretary's power to resolve ambiguities in his own regulations." *Auer*, 519 U.S. at 462-63. "A rule requiring the Secretary to construe his own regulations narrowly would make little sense, since he is free to write the regulations as broadly as he wishes, subject only to the limits imposed by the statute." *Id*. at 463. Accordingly, we need not take a jaundiced view of the DOL's own interpretation of "salary."

The plaintiffs also insist that other DOL opinion letters support their position that an employer may not reduce an exempt employee's salary and hours in response to work shortages. They cite U.S. Department of Labor, *Wage & Hour Opinion Letter dated May 27, 1999*, 1999 WL 1002408; U.S. Department of Labor, *Wage & Hour Opinion Letter dated April 20, 1999*, 1999 WL 1002390; U.S. Department of Labor*, Wage & Hour Opinion Letter dated July 3, 1997*, 1997 WL 1039254; and U.S. Department of Labor; *Wage & Hour Opinion Letter dated November 20, 1995*, 1995 WL 1032511. But the letters on which they rely concern only deductions from an employee's established salary within a pay period. These

-21-

letters do not address the issue of prospectively reducing an employee's salary.

The May 27, 1999, opinion letter considered whether debiting credit hours from an employee's "Paid Time Off" account for holidays would affect the employee's exempt status. 1999 WL 1002408 at 2. The letter said that debiting credit hours from the account would be permissible, so long as no deductions to the employee's salary were made: "An employee will not be considered to be 'on a salary basis' if deductions from his/her predetermined compensation are made for absences occasioned by the employer (e.g. closed on certain holidays) or the operating requirements of the business." *Id*. The April 20, 1999, opinion letter addressed an employer who paid his employees for holidays on which the employer's plant was closed only if the employee had been employed for three months and worked on the workday preceding the holiday. 1999 WL 1002390 at 1. The letter explained that an employee is not considered to be paid "on salary basis" if deductions are made from his "predetermined compensation for unworked holidays." *Id*. Likewise, the opinion letter dated July 3, 1997, determined that an employer who requires an employee requesting a partial day off under the Family and Medical Leave Act to take a full, personal day off without pay violates the salary-basis test, because the requirement would constitute an absence occasioned by the employer. 1997 WL 1039254. And the opinion letter on which the plaintiffs most strongly rely concerns an employer who wished to require

employees to use vacation days when a slowdown in work occurred. 1995 WL 1032511. The Administrator viewed this mandatory use of vacation time as "not unlike a direct deduction from pay," which was impermissible if imposed "to accommodate the operating requirements of a business." *Id*. at 2.

We are not persuaded that this authority applies to the case before us. In all these opinion letters cited by the plaintiffs, the employee has a set salary from which deductions are made (or may be made under the employer's policy) as a result of events that arise during the pay period. The DOL opinion letters as a whole maintain a clear distinction between prohibited deductions from salary (during a period when the worker is entitled to a particular salary) and authorized decreases in salary (which take effect only prospectively).

### 3. *Case Law*

Finally, we note that the weight of judicial authority also supports our view. Two district courts have reached similar conclusions that § 541.118 does not prohibit prospective reductions in pay. In *Caperci v. Rite Aid Corp.*, 43 F. Supp. 2d 83 (D. Mass. 1999), the court rejected the claim that the plaintiff pharmacists' "exempt" status was lost because their salaries could be reduced in conjunction with a reduction in the number of hours they were regularly scheduled to work. *Id*. at 96-97. An employee's schedule could be changed by an agreement between the employee and employer, by a pharmacist's relocation to a different store, or by

a change in the operational needs of the pharmacy.  *Id*. at 87.  The court reasoned that nothing in § 541.118(a) restricts employment agreements from being "amended, terminated, or superceded."  *Id*. at 97.  According to the court, an employer's exercise of its right to adjust salary for business purposes means only that the employee receives a new predetermined amount, not that the employer made an impermissible deduction from the previous predetermined amount.  *Id*.  The court relied on the DOL's 1970 opinion letter permitting prospective reductions in salary for operational needs, finding it "directly on point."  *Id*.

In our own circuit, Judge Belot of the District Court of Kansas reached a similar conclusion in *Ackley v. Department of Corrections*, 844 F. Supp. 680 (D. Kan. 1994).  The plaintiff argued that he was not compensated on a salary basis because his salary was subject to reduction for less-than-satisfactory performance evaluations.  *Id*. at 686.  The court disagreed, and held that § 541.118 does not prohibit future reductions, because to construe the regulation otherwise would "mean that no manager could ever have [the] employment contract renegotiated for a lower salary regardless of . . . past performance."  *Id*.  Under § 541.118, the court stated, "an employee's pay is not fixed, but is contingent in character.  Future pay adjustments do not implicate the regulation's intent because the employee knows before he or she performs the work what [the] pay will be."  *Id*.

We recognize that a third district court has come to the opposite conclusion.

In *Dingwall v. Friedman Fisher Assocs.*, 3 F. Supp. 2d 215, 220 (N.D.N.Y. 1998), the employer reduced the workweek of its staff from five days to four, with a corresponding one-fifth reduction in salary, for a period of six months. *Id.* Although the employer argued that this reduction in salary was not a deduction, but "merely a change in the 'regular' salaries to a new 'predetermined' amount," the court rejected this view. *Id.* The court held that "a reduction in work time that is imposed by the employer may not be the basis for a reduction in salary." *Id.* The opinion is not persuasive. The court relied on the following language of § 541.118:

> An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences *occasioned by the employer or by the operating requirements of the business*. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

*Id.* (quoting 29 C.F.R. § 541.118(a)(1)). But this language clearly refers only to deductions during the current pay period, for which the salary has been fixed, not reductions in future salary. Most importantly, and remarkably, the court made no reference to the applicable opinion letters.

This is not to say, however, that exempt status cannot be defeated by a pervasive manipulation of payments that makes a "sham" of what purports to be salary. The *Caperci* court recognized the "likely existence of a sham exception," as when an employer "ha[s] a regular practice each Friday of informing its

professional staff of the work schedule for the following week and of making prospective adjustments in compensation to reflect any changes." *Caperci*, 43 F. Supp. 2d at 97 n.14. Such adjustments to salary —an employer's attempt to obtain the benefits of the FLSA exemption without accepting the burdens of a salary-payment plan—can make the employee's wage the functional equivalent of an hourly wage.

An illustrative case is *Thomas v. County of Fairfax*, 758 F. Supp. 353 (E.D. Va. 1991). A group of fire lieutenants claimed that they were nonexempt employees under the FLSA and thus entitled to premium overtime for hours worked in excess of the statutory standards. *Id*. at 355. Fairfax County paid the lieutenants on a biweekly basis, determining the amount of each paycheck by multiplying the lieutenant's hourly wage by the number of hours he was in "pay status" for the period. *Id*. at 356. Because of the shift rotation at the Fire Department, a lieutenant could be in "pay status" for 96, 120, or 144 hours in a pay period, resulting in a change in salary every pay period. *Id*. at 357. The court reasoned that the payment policy violated the salary-basis test because the lieutenants' "pay [was] in fact reduced, on a cyclical basis, in direct correlation with the number of 'hours worked.'" *Id*. at 362. *See also Bongat v. Fairview Nursing Care Ctr., Inc.,* 341 F. Supp. 2d 181, 185 (E.D.N.Y. 2004) (where time cards, payroll stubs, and check listings showed that plaintiffs' weekly wages

varied based on the number of hours worked, defendant violated salary-basis test).

## III. **APPLICATION TO THIS CASE**

As a general rule, an employer may prospectively make adjustments in salary with a like adjustment in scheduled hours to accommodate its business needs. If, however, the salary changes are so frequent as to make the salary the functional equivalent of an hourly wage, we will treat the "salary" as a sham and deny the employer the FLSA exemption for professional employees.

The district court granted the *Presley* plaintiffs summary judgment on their claim that they are not exempt. A motion for summary judgment requires reviewing the evidence in the light most favorable to the nonmoving party. *See Simms. v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The movant is entitled to summary judgment only if the evidence so viewed establishes that the movant is entitled to judgment as a matter of law. Fed. R. Civ. Proc. § 56 (c); *Simms*, 165 F.3d at 1326.

The evidence before us does not satisfy that test. The record, especially when viewed in the light most favorable to Wal-Mart, indicates that Wal-Mart rarely reduced salaries of full-time pharmacists. Thus, we must reverse the district court's grant of summary judgment to the *Presley* plaintiffs.

As for Wal-Mart's contention that we should remand for entry of judgment in its favor, at oral argument it clarified that it is asserting that the *Presley*

plaintiffs' complaint failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. Proc. 12(b)(6). We disagree. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The *Presley* plaintiffs' complaint alleges: "The named Plaintiffs were paid on an hourly basis throughout their employment with Wal-Mart. . . . The named Plaintiffs, in all respects, were treated as and, in fact, were hourly employees." Aplt. App. at 199. This sufficiently pleads that Wal-Mart's payment scheme rendered them hourly employees. Wal-Mart's motion to dismiss was properly denied.

Because the summary judgment in *Yates* was predicated on the summary judgment in *Presley*, we must also set aside the *Yates* judgment. We need not address Wal-Mart's arguments that the *Presley* judgment was not entitled to any preclusive effect in *Yates*.

IV. **CONCLUSION**

We REVERSE the summary judgments in *Presley* and *Yates* and REMAND to the district court for further proceedings.